

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-25-00254-CV

**IN THE INTEREST OF K.G.S.**, a Child,

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2024-PA-00919
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:　Lori I. Valenzuela, Justice

Sitting:　　Rebeca C. Martinez, Chief Justice
　　　　　Lori I. Valenzuela, Justice
　　　　　Adrian A. Spears II, Justice

Delivered and Filed: August 20, 2025

AFFIRMED

Mother appeals the trial court's order terminating her parental rights to her child, K.G.S. (born 2013).[1] In Mother's sole appellate issue, she contends the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in K.G.S.'s best interest. We affirm.

---

[1] To protect the privacy of the minor child, we use initials to refer to the child. TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

**BACKGROUND**

The Texas Department of Family and Protective Services (the "Department") initially received a report of concerning drug and alcohol use by Mother and that she was panhandling at night with K.G.S. Mother has been a party in fourteen previous Department cases. She has had her rights terminated to two of her other children, and K.G.S. has previously been removed from her care. In June 2024, K.G.S. was removed from Mother's care, placed in the Department's care, and a family service plan was generated for Mother. Mother's service plan required her to, among other things, take part in psychological and psychosocial evaluations; engage in individual counseling, parenting classes, and drug treatment; show proof of employment or income and maintain stable housing; and provide lists of her medication prescriptions and of people in her support network to the Department. Although Mother attempted to engage in some of her services, she did not complete them, and the Department ultimately pursued termination of Mother's parental rights.

On April 8, 2025, the trial court held a bench trial at which three witnesses testified: Mother's initial Department caseworker, Norma Lailson; Mother's second Department caseworker, Julie Bushrod; and Mother. At the conclusion of the trial, the trial court signed an Order of Termination terminating Mother's parental rights and naming the Department permanent managing conservator of K.G.S. In its order, the trial court terminated Mother's rights pursuant to section 161.001(b)(O) and (P), finding Mother failed to comply with the provisions of a court order that established the actions necessary for her to obtain the return of K.G.S., used a controlled substance in a manner that endangered K.G.S., and that termination of Mother's parental rights as to K.G.S. was in the child's best interest. On appeal, Mother challenges the legal and factual sufficiency of the evidence only as to the best interest finding.

**STANDARD OF REVIEW**

To terminate parental rights pursuant to Family Code section 161.001, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE §§ 161.001(b), 161.206(a).

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See* TEX. FAM. CODE §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (legal sufficiency). The trier of fact is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *In re J.P.B.*, 180 S.W.3d at 573. In a bench trial, such as here, "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citation omitted). We therefore defer to the trial court's judgment regarding credibility determinations. *See id.* While we must detail the evidence relevant to the issue of parental termination when reversing a finding based upon insufficient evidence, we need not do so when affirming a verdict of termination. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014).

**BEST INTEREST**

Because Mother does not challenge the predicate grounds of termination, only whether termination was in K.G.S.'s best interest, we limit our review to the best interest finding.

When considering the best interest of the child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). "[T]he best interest standard does not

permit termination [of parental rights] merely because a child might be better off living elsewhere." *In re A.H.*, 414 S.W.3d 802, 807 (Tex. App.—San Antonio 2013, no pet.) (citation omitted). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE § 263.307(a). The Department has the burden of rebutting these presumptions with clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d 92, 97 (Tex. App.—San Antonio 2017, no pet.). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *In re R.S.-T.*, 522 S.W.3d at 97. To determine whether the Department satisfies its burden, the Texas Legislature has provided several statutory factors[2] for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has provided a similar list of factors[3] to determine a child's best interest. TEX. FAM. CODE § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015,

---

[2] The statutory factors include: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[3] The *Holley* factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371–72.

no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). "A trier of fact may measure a parent's future conduct by [her] past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). This conduct can include a history of domestic violence and drug use, which can destabilize the home and expose children to physical and emotional harm if not resolved. *See, e.g.*, *In re J.I.T.P.*, 99 S.W.3d 841, 846–48 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *8 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.). In analyzing these factors, the court must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

## DISCUSSION

One of the grounds on which the court terminated Mother's parental rights was that her use of controlled substances that endangered the health and safety of K.G.S. "A parent's illegal drug use supports a finding that termination of the parent-child relationship is in the best interest of the child." *In re A.M.O.*, No. 04-17-00798-CV, 2018 WL 2222207, at *2 (Tex. App.—San Antonio May 16, 2018, no pet.) (mem. op.); *In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op.) (explaining drug use implicates multiple *Holley* factors). Because a parent's illegal drug use is probative evidence that termination

of her parental rights was in the child's best interest, and because Mother does not challenge this portion of the trial court's order on appeal, this evidence supports the trial court's finding that termination of Mother's parental rights was in K.G.S.'s best interest. *In re C.H.*, 89 S.W.3d at 28.

The other statutory ground on which the court terminated Mother's parental rights was her failure to comply with the provisions of a court order that established the actions necessary for her to obtain the return of K.G.S. The evidence shows that Mother failed to comply with the requirements of the family plan, which sought to ensure K.G.S. would have a safe and stable environment. Mother did not engage in approved counseling, parenting classes, drug treatment, show proof of stable housing and employment or income, or provide proof of her support network. The trial court, therefore, could have reasonably credited this evidence as supporting its best-interest finding. *See In re O.N.H.*, 401 S.W.3d 681, 687 (Tex. App.—San Antonio 2013, no pet.) (noncompliance with service plan is probative of child's best interest).

Specifically, related to drug treatment, of the fifteen drug tests that the Department scheduled for Mother, Mother appeared for only seven, and the results of the tests she did complete were "concerning" to the Department. Mother was taking methadone for treatment; however, she would not sign a release authorizing the Department to receive notes from her methadone treatment until shortly before trial. Although Mother denied using any illegal drugs in the past ten years or that she was ever intoxicated around K.G.S., the trial court could have inferred from Mother's failure to submit to court-ordered drug testing that she was using drugs. *See In re K.C.B.*, 280 S.W.3d 888, 895 (Tex. App.—Amarillo 2009, pet. denied) ("The trial court may infer from a refusal to take a drug test that appellant was using drugs."). Because drug use can destabilize the home and expose children to physical and emotional harm if not resolved, evidence of drug use weighs in favor of termination. *See, e.g.*, *In re K.J.G.*, 2019 WL 3937278, at *8.

Further, evidence elicited at trial shows that Mother did not follow up on recommendations for counseling or parenting classes. Mother testified that she had been attending weekly counseling and parenting classes outside the Department-approved courses; however, she conceded that she did not receive the required permission or provide proof to the Department that she had completed the required classes. Evidence at trial did reveal that Mother suffers from mental health issues. *See In re S.R.*, 452 S.W.3d 351, 363 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("Mental illness alone is not grounds for terminating the parent-child relationship."). However, there is no evidence that Mother was taking the necessary steps to improve her mental health conditions in accordance with her family service plan or that her mental health conditions led to her failure to complete her family plan. *See id.* ("Untreated mental illness can expose a child to endangerment, however, and is a factor the court may consider."); *In re L.E.R.*, 650 S.W.3d 771, 788 (Tex. App.—Houston [14th Dist.] 2022, no pet.). In contrast, the Department caseworkers both testified that Mother did not take accountability for her actions leading up to the pending case and that she blamed K.G.S. for her circumstances. And although Mother did attend weekly visits with K.G.S. during the case, evidence elicited at trial illustrates that during these visits, Mother would smell of alcohol and have non-age-appropriate conversations with K.G.S.

Moreover, evidence of Mother's instability in employment and housing also supports the best-interest finding. "A child's need for permanence through the establishment of a 'stable, permanent home' has been recognized as the paramount consideration in a best-interest determination." *In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Evidence at trial revealed that Mother moved from place to place, was unemployed, panhandled, and relied on family and friends to financially support herself and K.G.S. All these factors taken together support the trial court's best-interest finding. *See id.*

Finally, the record shows K.G.S. has expressed his desire to be adopted and did not want to return to living with Mother, but would still like to communicate with her. *Holley*, 544 S.W.2d at 371–72. Caseworker Bushrod testified that K.G.S. said he did not want to live with Mother because he was tired of the panhandling and because when Mother "drinks a lot, she loses control and she would spank him and hit him." Bushrod additionally told the trial court that K.G.S. was doing well in school while living in a foster home and that his behavior was improving with structure. Testimony at trial also revealed that Mother had indicated to the Department that she was not willing to take K.G.S.; however, Mother disputed this testimony.

After reviewing the evidence under the appropriate standards of review, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in K.G.S.'s best interest. Therefore, we hold that the evidence is legally and factually sufficient to support the trial court's best interest finding.

## CONCLUSION

We affirm the trial court's Order of Termination.

Lori I. Valenzuela, Justice